**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

NEUBERGER BERMAN REAL ESTATE        *
INCOME FUND, INC.
                                    *    CIVIL NO. AMD-04-3056
    V.
                                    *
LOLA BROWN TRUST NO. 1B, ET AL.
                                    *
*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OPINION**

By Order dated March 25, 2005, Judge Andre M. Davis referred
to the undersigned the determination of all discovery disputes.
(Paper No. 101).

By Memorandum and Order dated June 23, 2005, the Court
granted in part and denied in part plaintiff's motions to compel.
(Paper No. 174).  Because "the Court found many of defendants'
discovery positions lack[ed] 'substantial justifi[cation],'" the
Court expressed its intention "to impose on defendants and their
counsel reasonable expenses, including attorneys' fees associated
with the filing and litigation of the two motions to compel,"
after providing both sides with an opportunity to be heard on the
issue.  (Id. at 75.)  The plaintiff filed an Application for an
Award of Attorneys' Fees and Costs related to two substantive
discovery motions, seeking $459,657.70 for Milbank, Tweed, Hadley
& McCloy, LLP ("Milbank") and $8,912.50 for DLA Piper Rudnick

-1-

Gray Cary US LLP ("DLA Piper") for a total request of $468,570.20 (Paper No. 197, Ex. 2).[1]  The briefing is complete.[2]  At defendants' request, a hearing was held on October 25, 2005.

After reviewing the foregoing application, memoranda and exhibits and having considering the arguments of counsel, the Court grants plaintiff an award of $154,654.89 in expenses, including attorneys' fees.

## I. Background

The case involves a dispute over an allegedly fraudulent tender offer for the controlling shares of plaintiff Neuberger Berman Real Estate Income Fund Inc.  (Paper No. 1).  During discovery, plaintiff filed a Motion to Compel Production of Documents Improperly Withheld on the Basis of Privilege, (Paper No. 71) and a Motion to Compel Production of Documents and Responses to Deposition Questions and Interrogatories.  (Paper

---

[1] While the amount sought in the application is considerable, plaintiff did not seek reimbursement for any of its expenses, such as messenger, copying, etc., except Lexis-Nexus research charges. Additionally, plaintiff did not seek reimbursement for its work on the fee application.  With proper documentation and if reasonable, these expenses were, of course, recoverable.

[2] On July 22, 2005, defendants filed a Response in Opposition to Plaintiff's Application for an Award of Attorneys' Fees and Costs. (Paper No. 193).  Plaintiff filed its Motion in Support of Application for an Award of Attorneys' Fees and Costs on August 8, 2005.  (Paper No. 197, Ex. 2).  On August 25, 2005, with the permission of the Court, defendants filed a Surreply in Opposition to Plaintiff's Application for an Award of Attorneys' Fees and Costs.  (Paper No. 200).
After the hearing, the Court requested the plaintiff to file certain additional information which plaintiff did.  See Paper No. 217.

No. 99).

**A. Motion to Compel Production of Privilege Log and Documents (Paper No. 71).**

On November 8, 2004, plaintiff served its First Request for Production of Documents.  On December 16, 2004, in response thereto, defendants filed a privilege log, in which they asserted approximately 680 documents were protected from discovery under both attorney client privilege and attorney work product.  After raising the issue of whether the privilege log was sufficient, on December 28, 2004, plaintiff served on defendants a "Motion to Compel Fed. R. Civ. P. 26 (a) Disclosures, Production of Documents and Proper Privilege Log."  (Paper No. 73).[3]

On January 14, 2005, defendants submitted a revised privilege log.  The revised privilege log contained some of the same defects as the original log with a few limited exceptions: the revised log identified whether the "parties" to the document were the author, recipient or carbon copy recipient and the defendants withdrew their assertion of attorney work-product for

---

[3] Briefing continued between the parties on the sufficiency of the privilege log and the discoverability of the withheld documents through May 6, 2005.  Defendants submitted their opposition on February 2, 2005, (Paper No. 88), and plaintiff replied on February 23, 2005. (Paper No. 94). Defendants moved to file a surreply, (Paper No. 97, Ex. 2), which the Court granted on March 31, 2005. Plaintiff, as movant, was allowed to file a surreply, and did so on April 4, 2005. (Paper No. 108).  In addition, the plaintiff filed a Motion to Compel Production of Documents Improperly Withheld on the Basis of Privilege (Paper No. 95), which essentially updated and supplemented the original motion, as defendants had produced some documents and had provided additional information about the withheld documents.

all but 43 documents, while maintaining the assertion of
attorney-client privilege.

On March 31, 2005, the Court ordered defendants to
supplement their privilege log and agreed to review a limited
number of documents in camera.   In early April 2005, the
defendants delivered two boxes of privileged documents and an
accompanying 600 page privilege log to the Court.   The defendants
still failed to demonstrate the context or circumstances which
supported withholding the documents under the attorney-client
privilege or work product doctrine.   Moreover, defendants
continued to assert attorney-client privilege for all the
documents on the log, and asserted attorney-work product for 19
of the previous 43 documents.

On April 22, 2005, the Court issued a letter order, which
found after review of a considerable number of the submitted
documents that the "defendants have misinterpreted the attorney-
client and work product privileges to a significant degree."
(Paper No. 117).   The Court required the lead counsel for the
defendants to certify his review of all documents withheld on the
basis of privilege under the governing law.   Over plaintiff's
counsel's objections, the Court allowed defendants to submit
support for their privilege assertions, in the form of affidavits
for each document by April 29.   (Id.)

Even after the Court denied the defendants' request for

additional time, the defendants failed to submit their final
revised privilege log and accompanying documents until May 2,
2005.  In this final privilege log, work product was asserted for
226 documents.

In its opinion the Court found the "[d]efendants' initial
responses were plainly inadequate. Defendants had an obligation
on December 17, 2004, to produce all responsive non-privileged
documents and to identify all documents withheld on the basis of
privilege on a log, in conformance with Fed. R. Civ. P. 26(b)(5)
and plenary case law.  As discussed _infra_, on December 17, 2004,
the defendants also had the burden of demonstrating the
applicability of the asserted privileges on a document-by-
document basis as a matter of fact through submission of
supporting documentation, including affidavits, deposition
excerpts, etc.  This, the Court finds, the defendants failed to
do." (Paper No. 174 at 16).

**B. Motion to Compel Production of Documents and Responses to
Deposition Questions and Interrogatories (Paper No. 99).**

On March 24, 2005, plaintiff sought an order compelling
certain discovery: (1) documents concerning the IRS audit of the
dissolution of Horejsi and the communications of defendants or
their counsel with the SEC; (2) the identification that defense
counsel had with Full Value Partners LP and its affiliated
persons or representatives; and (3) answers to deposition
questions of defendants' witnesses Horejsi and Miller to which

they were improperly instructed not to answer.  (Paper No. 99).

On June 23, 2005, the Court ordered defendants (1) to produce all

documents concerning the IRS audit of the dissolution of Horejsi

and communications of the defendants and counsel with the SEC,

(2) defendants were instructed to answer interrogatory no. 4; and

(3) the depositions of Messrs. Horejsi and Miller were continued

for plaintiff to ask the questions previously objected to on

other grounds.  (Paper No. 174).

## II. Discussion

"The great operative principle of Rule 37(a)(4) is that the

loser pays." <u>Rickels v. City of South Bend</u>, 33 F.3d 785, 786

(7th Cir. 1994).  "The court *shall*, after affording an

opportunity to be heard, require the party or the deponent whose

conduct necessitated the motion or the party or attorney advising

such conduct or both of them to pay to the moving party the

reasonable expenses incurred in making the motions, including

attorney's fees, unless the court finds... that the opposing

party's nondisclosure, response, or objection was substantially

justified or that circumstances make an award of expenses

unjust." Fed. R. Civ. P. 37 (a)(4).

In their memorandum opposing plaintiff's application,

defendants set forth eight primary reasons for denial of any

award or for a significant reduction of the expenses sought:

> 1. that their positions were substantially justified, and
>    even if they were not, the fee award should be reduced

72% based on the percentage of documents that Court
found privileged, the Court's rejection of the
"capacity" argument and because the plaintiff utilized
the same justification as the defendants to withhold
the IRS documents in depositions and SEC documents.

2.   that many of the hours in the fee petition were
     necessarily created post hoc due to block bills.

3.   that billing records were not "contemporaneous", the
     redaction of the bills made meaningful review
     impossible and that their expert's analysis
     demonstrated that the time records resulting from this
     post hoc billing were mathematically and statistically
     unbelievable.

4.   that utilizing more than a dozen personnel to bill
     904.25 hours on two discovery motions was per se
     unreasonable, as it resulted in duplicative work and
     excessive internal conferences.

5.   that the hourly rates charged by counsel were excessive
     in light of the relevant market, Baltimore.

6.   that there was massive mismanagement and misallocation
     of resources, specifically failing to properly staff
     its attorneys in accord with skill and billing rate.

7.   that the fee petition contained billed time for
     unrelated entries and work that would have had to be
     done regardless of the motions.

8.   that their independent expert found that the amount
     charged was 20X higher than what should reasonably have
     been charged for this type of dispute.

(Paper No. 193, 3-7).

     As discussed below, the Court agrees that some significant

reduction in the fee petition is necessary to account for points

1, 2, 4, 5, 6 and 7.  However, as also will be discussed below,

the Court declines to adopt the methodology employed by

defendants' expert, his conclusions expressed in points 3 and 8

or his view that the reasonable expense award is in the $23,000-$70,000 range, as too mechanistic and lacking in appreciation of the discovery dispute and the work that defendants' discovery misconduct occasioned for plaintiff's counsel.

In their opposition to the fee application, the defendants did not attempt to evaluate each time entry in light of the overall work performed for the subject discovery motions. Rather, the defendants made these general arguments, gave some specific examples and suggested elimination of categories of work from reimbursement or a percentage reduction, both in their legal briefing and in their expert's submission.

The defendants employed an expert, Mr. Toothman, an attorney experienced in fee petition analysis and fee issues.  The Court has reviewed carefully his analysis.  Mr. Toothman identified five problematic types of billing entries in the fee petition: redacted entries, internal conferences, cryptic entries, internal memoranda and clerical work.  He argued that any billing entries containing any of the five identified problems should be completely disallowed.[4]  Using the chronological listing of billing entries (Toothman Affidavit, Ex. C), he conducted an entry-by-entry analysis and coded each problematic entry,

_____

[4] Counsel for the plaintiff utilized "block billing," or billing time for multiple tasks in a single day without explaining how much time was spent for each independent task.  Consequently, if a entry contains time for multiple tasks and if the description for one of the tasks is problematic, it is impossible to determine how much time was spent on that particular "problematic" task.

resulting in an elimination of 794.6 hours of billed time,
representing $376,510.75 in fees.  Elimination of these
problematic entries left only 109.65 hours, representing
$62,072.50 in Milbank fees.  As discussed below, the Court agrees
that some significant reduction necessarily must be imposed due
to block billing method of timekeeping, but disagrees with Mr.
Toothman's elimination of any and all award for billing time
entries based on block billing.  While the Court disfavors block
billing, acknowledges the imprecision of post-hoc allocation by
the billing attorney and recognizes the general requirement of
contemporaneous timekeeping, to reject <u>any</u> reimbursement of time
spent in the remedial Rule 37 situation is too extreme and would
represent a windfall to the sanctioned party.  Notwithstanding
the block billing of counsel, the Court was able to assess the
reasonableness of the time spent on the subject discovery
dispute.

Similarly, the Court agrees that some reduction should be
imposed for the large amount of time billed by many lawyers for
internal conferences and internal memoranda, but the Court does
not agree that all time of all lawyers should be eliminated.
Under the Local Rules, the time of the most senior attorney for
all conferences and memoranda is allowed.  <u>See</u> <u>The Rules and</u>
<u>Guidelines for Determining Lodestar Attorney's Fees in Civil</u>
<u>Rights and Discrimination Cases</u> of this Court (Appendix B to

Local Rules of the District of Maryland).  However, the Court's review indicates that generally only one attorney has billed time to each conference.  Thus, following the local rules would result in substantially <u>no</u> decrease in the time awarded.[5]  Instead, as discussed <u>supra</u>, for each discrete task where plaintiff employed an unreasonable number of internal conferences or memoranda, all time entries containing such entries were reduced by 15% regardless of the number of tasks contained within the block bill or even whether time for multiple conferences was listed in the block bill, recognizing that this probably under-awards the plaintiff but in the absence of greater information on the nature and subject of the conferences and memoranda, a greater award is not supported.

Mr. Toothman made other observations and offered other opinions about the fee petition generally, but these observations and opinions were not tied to a specific and comprehensive reduction of fee award.  The Court does not disagree with some of his comments, but some of his opinions were not necessarily on-point.  For example, his opinion on the unreasonableness of the fee petition was based in part on a too narrow a definition of the scope of the dispute.  "...I must note that this is an

---

[5] Mr. Toothman also identifies billed certain work as "clerical" and therefore not reimbursable.  The Court agrees that clerical work is part of overhead and not usually separately reimbursable.  However, the referenced entries do not appear to be clerical, at least in the main and given the small amount of time and money involved, the Court has not reduced the fee sought on this basis.

extraordinary sum of money for what is otherwise a fairly
routine, unfortunately all too common, discovery dispute over
claims of privilege for two boxes of documents." (Toothman
Affidavit at ¶ 9.)  If indeed on December 17, 2004, defendants
had provided plaintiff with a proper privilege log with
supporting documentation and a principled explanation of its
assertion of privilege, this Court would readily agree.  It was
the slow, miserly and changing response to legitimate discovery
requests that was the core inadequacy of defendants' discovery
misconduct which necessarily increased the time that plaintiff's
counsel had to devote to the matter.  Moreover, due to the
inadequacy of the document description on the log and the lack of
any context in supporting affidavits, plaintiff's counsel did
have to spend time "scrambling" -- trying to undermine assertions
of privilege on the withheld documents by arguments from produced
documents and deposition testimony.

In sum, the Court agrees with a number of defendants'
factual and legal arguments for the reduction of the fee petition
and has reduced the fee award to reflect them.  However, the
Court disagrees with Mr. Toothman's methodology in arriving at
the reasonable expense award figure of "no greater than
$62,072.50 (to which a reasonable part of DLA Piper's $8,912.50
could be added."  Toothman Declaration ¶ 23.[6]

---

[6] Alternatively, Mr. Toothman states that the more reasonable fee
award should be $22,325, representing a single lawyer's time, that of

Rather, in accord with this Court's Guidelines and governing precedent, this Court has reviewed the fee petition entry-by-entry and category of work by category of work to determine the reasonableness of the hours spent on the various memoranda and other categories of work plaintiff's counsel identified as related to the two discovery motions.

### A. Substantial Justification

A position is substantially justified if "the dispute was 'genuine', meaning reasonable lawyers could disagree about the appropriateness of the disputed position." Pierce v. Underwood, 487 U.S. 552, 565 (1988)(citing Advisory Committee's Notes on 1970 Amendments to FED. R. CIV. P. 37(a)(4)) (internal references omitted).  The party opposing the motion has the burden of establishing substantial justification for the position.  PLX, Inc. v. Prosystems, Inc., 220 F.R.D. 291, 295 (N.D. W. Va. 2004); Rickels v. City of South Bend, 33 F.3d 785, 787 (7th Cir. 1994).

Defendants allege that at least 30% of their privilege assertions were substantially justified, because the Court denied the motion to compel as to that percentage of the withheld documents.  (Paper No. 193, Ex. 1 at 8).  For the remaining documents, defendants maintain that Fourth Circuit case law on point is unsettled, so reasonable attorneys could disagree over whether the communications were primarily legal or business in

Ms. Rappaport's (after subtracting the problem entries discussed above) plus $5,000 for local services.  Toothman Declaration ¶ 23(b)

nature.  (Id. at 8-9).  The defendants' arguments largely miss
the mark.  At issue here was defendants' withholding of a massive
number of documents on a shifting basis and without the required
explanation of the alleged privileged status, dragging the matter
out over months.  As discussed in the June 23, 2005 opinion, the
defendants relied upon the status of the parties to make broad
generalized assertions of privilege and work product, instead of
laying out the circumstances for withholding each particular
document.  The defendants' failure to approach its discovery
obligations in a principled, timely fashion created a distracting
sideshow -- keeping counsel from the exploration and prosecution
of plaintiff's claim.

A blanket claim of privilege completely contravenes the well
settled requirements for a valid assertion of privilege.  United
States v. Construction Products Research, Inc., 73 F.3d 464 (2d
Cir. 1996);  Allendale Mut. Ins. Co. v. Bull Data Sys, Inc., 145
F.R.D. 84, 85 (N.D. Ill. 1992). (privilege log should provide "a
specific explanation of why the document is privileged.").
Consequently, reasonable attorneys would agree that no basis
exists for withholding documents with only a blanket assertion of
privilege or work product.  See, e.g. Eureka Financial Corp. v.
Hartford Acc. and Indem. Co., 136 F.R.D. 179, 186 (E.D. Cal.
1991) (imposing 37(a)(4) sanctions on party making blanket
privilege assertions); Bowne v. AmBase Corp., 161 F.R.D. 258, 262

(S.D.N.Y. 1995) (expenses awarded when plaintiff supported claim

with "sweeping generalizations" about categories of documents in

lieu of providing evidence about the characteristics of each

document).[7]   Accordingly, the Court finds that defendants'

discovery posture was not substantially justified.

### B. Apportionment of Reasonable Expenses

Defendants seek an apportionment of "the reasonable expenses

incurred in related to the motion among the parties and parties

in a just manner." Fed. R. Civ. P. 37(a)(4)(C).  Where a motion

to compel is only granted in part, an award of attorneys' fees

---

[7] Defendants also allege their assertions with regard to SEC draft documents were substantially justified, because their counsel were located in Colorado and understood the privilege was governed by Tenth Circuit law.  (Paper No. 193 at Exhibit 1 at 9-10).  As plaintiff notes, the defendants failed to cite any legal authority for applying the privilege law of the federal circuit in which the attorney resides, rather than in the federal circuit where the case is filed.  However for the reasons discussed supra, even if this argument had merit, plaintiff's blanket assertions of work product and attorney-client privilege render all of its positions unjustifiable, as neither the Court nor the parties could determine whether the positions had merit.

In the alternative, defendants argue that because the plaintiff allegedly asserted privilege over the SEC drafts, imposing fees on this ground are unjust.  (Id. at 10).  An award of fees has been found to be unjust when the moving party engaged in improper conduct.  See Solomon v. Scientific American, 125 F.R.D. 34 (S.D.N.Y. 1988)(moving party failed to bring controlling law to the Court's attention and relied on conclusory allegations); Ballard v. Allegheny Airlines Inc., 54 F.R.D. 67 (E.D. Pa. 1972) (counsel quibbled together rather than cooperating); Newmont v. Monroe County, 225 F.R.D. 266, 268 (S.D. Fla. 2004) (result of motion failed to introduce useful information).  Here, there was no showing that the plaintiff asserted that the defendant's drafts were not privileged while at the same time seeking protection for their own SEC drafts under the same logic.  As the defendants admit in their briefing, plaintiff argued that only certain of the drafts were privileged.  Perhaps, in some circumstances, consensus by the parties may be evidence of substantial justification.  However, for the reasons discussed supra, those circumstances are not present here.

may be reduced in justice so as to not compensate the moving party for the unsuccessful portions of the motion.  See Poole v. Textron, 192 F.R.D. 494, 505 (D. Md. 2000) ("[B]ecause the Court granted the motion as of five of the six contested requests (or 83% of the requests), the Court grants that percentage of the attorney time and other expenses related to that motion.").  This essential mechanical approach employed in Poole, is inappropriate here.  While it is understandable that the defendants would argue for some proportionate reduction in fees, here, defendants were ordered to produce the vast majority of withheld documents. After all, the documents on the final May 2 privilege log constituted a small number of the documents defendants originally attempted to withhold.  The number fell as a result of a court order requiring defendants to remove entries from the privilege log that were not arguably privileged, not from any voluntary action by the defendants.  So even though approximately 20%-30% of the documents on the May 2 log[8] ultimately were found to be privileged, no commensurate reduction will be made on this ground.  The plaintiff's counsel's fees were necessitated not only by defendants' improper withholding of a certain number of documents, but the unduly long and contentious process of framing

---

[8] A dispute exists between the parties over the percentage of the privilege claims upheld from the May 2 privilege log.  However, whether 20% or 30% of the privilege claims on May 2 were upheld is irrelevant, as these documents constitute such a small portion of the documents originally withheld by the defendants.

the issues for the consideration of the opposing party and the court. However, the Court will reduce the award by 5% after all other reductions have been made in recognition of the properly asserted privilege in some instances.

### C. Award of Reasonable Attorneys' Fees and Costs

Rule 37(a)(4) of the Federal Rules of Civil Procedure mandates that *reasonable* expenses should be awarded to the successful party. The lodestar method is the appropriate standard for determining a reasonable award, by multiplying reasonable hours against the reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Costar Group, Inc. v. Loopnet, Inc., 106 F.Supp.2d 780, 787 (D. Md. 2000).

As a guide for determining reasonableness, some courts within this District have applied the twelve-part Johnson test.[9] Costar Group, Inc. v. Loopnet, Inc., 106 F.Supp.2d 780, 787 (D. Md. 2000) (applying Rule 37(a)); International Association of

---

[9] The Johnson factors include:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitation imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees in similar cases.

Johnson v. Georgia Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974).

Machinists and Aerospace Workers v. Werner-Matsuda, ___ F.Supp.2d

___, 2005 WL 2254002, *8-9 (D. Md. 2005) (September 16, 2005)

(motion for sanctions on discovery violation).[10]  While the

Fourth Circuit has not addressed the appropriate standard for

reasonableness of fees in discovery dispute,[11] the Circuit has

---

[10] While cases outside of the Circuit have not explicitly applied
the Johnson factors to Rule 37 sanctions, the decisions have relied on
cases under the expense-shifting sanction statutes in other contexts.
See, e.g. PLX, Inc. v. Prosystems, Inc., 220 F.R.D. 291, 295 (N.D. W.
Va. 2004) (citing to case applying fee-shifting statutes when
determining appropriate market rate); Cobell v. Norton, 231 F.Supp.2d
295, 302 (D.D.C. 2002) (same); Stein v. Foamex Intern, Inc., 204
F.R.D. 270 (E.D. Pa. 2001) (citing to cases applying fee-shifting
statutes to determine proper application of lode star method); Bowne
v. AmBase Corp., 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (same).

[11] Other courts have applied the four-part Rule 11 test.  In
determining the lodestar amount, the following factors are relevant:
"(1) the reasonableness of the opposing party's attorneys' fees; (2)
the minimum to deter; (3) the ability to pay; and (4) factors related
to the severity of the Rule 11 violation." In re Kunstler, 914 F.2d
505, 522-23 (4th Cir. 1990).  Poole v. Textron, 192 F.R.D. 494, 508
(D. Md. 2000) (applying Rule 11 test for reasonableness of attorneys
fee while determining sanctions under Rule 37(a)); Gordon v. New
England, 168 F.R.D. 178, 180 (D. Md. 1996) (applying Rule 11 test in
motion for sanctions on discovery violation under Rule 37(d)).  See
also Lithuanian Commerce Corp. v. Sara Lee Hosiery, 177 F.R.D. 205,
214 (D.N.J. 1997).  Without rising to the level of bad faith, the
cases involved egregious violations of the discovery laws.  For
example, in Poole, the defendants engaged in several other instances
of discovery conduct that together "constituted a pattern of defense
obduracy to legitimate discovery." Poole, 494 at 500 n. 4.
    "Rule 37, much like Rule 11, is designed to deter future
misconduct during discovery." Gordon v. New England, 168 F.R.D. 178,
180 (D. Md. 1996).  In comparison, the expense shifting statutes such
as Title VII and Section 1988 were designed to address both remedial
goals and the advancement of the societal goals of the statute.  See,
e.g. Hensley v. Eckert, 461 U.S. 424, 429 (1983)("[T]he purpose of §
1988 is to 'ensure effective access to the judicial process for
persons with civil rights grievances") (quoting H.R. Rep. No. 94-
1011).
    Yet, even though the purposes behind Rule 11 and Rule 37(a) are
similar, Congress chose to achieve those goals through different
means.  As a result, the procedure for achieving redress under Rule
37(a) is more akin to the expense-shifting statutes.  Rule 37(a)
provides for awarding "to the moving party the reasonable expenses

applied the <u>Johnson</u> factors in disputes involving various fee-
shifting statutes.  <u>See</u> <u>Brodziak v. Runyon</u>, 145 F.3d 194, 196
(4th Cir. 1998) (fee award in Title VII case under 42 U.S.C.A.
2000e-5) (quoting <u>EEOC v. Service News Co.</u>, 898 F.2d 958, 965 (4
Cir. 1990)); <u>Daly v. Hill</u>, 790 F.2d 1071 (4th Cir. 1986)(fee
award under Section 1988); <u>National Wildlife Foundation v.</u>
<u>Hanson</u>, 859 F.2d 313, 318-9 (4 Cir. 1988) (fee award in citizen
suits cases under 33 U.S.C. § 1365); <u>Board of Educ. of Frederic</u>
<u>Cty. v. I.S.</u>, 358 F.Supp.2d 462, 465-6 (D. Md. 2005)(fee award in
IDEA case).  Thus, the Court will follow review the time entries
submitted by plaintiff for reasonableness in light of the <u>Johnson</u>
factors.  Here, plaintiff alleges it spent almost $500,000 in
resolving the discovery dispute.  The defendants attack under the
lodestar method on several grounds, each of which will be
addressed in turn.

### 1. Reasonable Hourly Rate

The plaintiff is entitled to compensation only at a

---

incurred in making the motions." FED. R. CIV. P. 37(a).  The expense-
shifting statutes also mandate the provision of the reasonable fees
incurred on the motion.  <u>See</u> 42 U.S.C. § 2000e-5 (2005) (awarding
"reasonable attorney's fee (including expert fees) as part of the
costs"); 42 U.S.C. § 1988 (2005) ("may allow the prevailing party...
reasonable attorney's fee as part of the costs"); 33 U.S.C. § 1365(d)
(awarding "costs of litigation").  Rule 11 does not require the party
to repay all reasonable fees, but states that the "sanction imposed
for violation of this rule shall be limited to what is sufficient to
deter repetition of such conduct or comparable conduct by others
similarly situated." FED. R. CIV. P. 11 (c)(2).
    The Court will follow the more recent precedent and review the
time entries submitted by plaintiff for reasonableness in light of the
<u>Johnson</u> factors.  However, if the Court were to apply the Rule 11
factors, the result would be the same.

reasonable hourly rate.  "This requirement is met by compensating attorneys at the 'prevailing market rates in the relevant community." Rum Creek Coal Sales Inc. v. Carperton, 31 F.3d 169, 175 (4th Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).  "The burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Costar Group, Inc. v. Loopnet, Inc., 106 F.Supp.2d 780, 787-788 (D. Md. 2000) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  Typically, the relevant community is the community where the court is located.  National Wildlife Foundation v. Hanson, 859 F.2d 313, 317 (4th Cir. 1982).  "If the matter is so complex and specialized that 'no attorney with the required skill is available locally, a court may award fees from counsel located elsewhere." Montcalm Pub. Corp. v. Virginia, 199 F.3d 168, 173 (4th Cir. 1999).  See also Rum Creek Coal Sales Inc. v. Carperton, 31 F.3d 169, 179 (4th Cir. 1994).

"Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate." Costar Group, Inc. v. Loopnet, Inc., 106 F.Supp.2d 780, 788 (D. Md. 2000).  "In the absence of sufficient documentation, the court may rely on its own knowledge of the market." Id.  See also Lucero v. Trinidad, 815 F.2d 1384,

1385 (10th Cir. 1987).   Depending upon the circumstances, courts

have considered the rate charged by the petitioning attorney

practicing in the appropriate locality, <u>see</u>, <u>e.g.</u> <u>Rum Creek Coal</u>

<u>Sales, Inc. v. Caperton</u>, 31 F.3d 169, 178-9 (4th Cir. 1994);

<u>Yamaha Motor Corp. v. Jim's Motorcycles, Inc.</u>, 381 F.Supp.2d 499,

504 (E.D. Va. 2005), or <u>The Rules and Guidelines for Determining</u>

<u>Lodestar Attorney's Fees in Civil Rights and Discrimination Cases</u>

of this Court (Appendix B to Local Rules of the District of

Maryland), which "provide a presumptively reasonable range of

hourly rates in civil rights and discrimination cases."   <u>Poole v.</u>

<u>Textron, Inc.</u>, 192 F.R.D. 494, 509 (D. Md. 2001).[12]

    Two law firms represented plaintiff during the subject

discovery dispute: local counsel, DLA Piper Rudnick Gray Cary US

LLP ("DLA Piper") and the law firm of Milbank, Tweed, Hadley &

McCloy LLP ("Milbank"), located in New York, New York.   The

plaintiff seeks the following rates for its Milbank attorneys:

| Name | Year Graduated from Law School | Hourly Rate |
|------|-------------------------------|-------------|

---

    [12] "While the Rules and Guidelines by their terms do not apply to
attorneys' fees requests in discovery disputes, the Court utilized
them here in light of the size of the attorneys' fee request."   <u>Poole
v. Textron, Inc.</u>, 192 F.R.D. 494, 509 (D. Md. 2001).
    The guidelines provide the following presumptively reasonable
hourly rates:
$135-$170 – attorneys with less than eight years experience
$190-$225 – attorneys with greater than eight years experience
$65 – paralegals and law clerks

| Michael L. Hirschfeld | 1973 | $720.00 - 750.00[13] |
|---|---|---|
| Stacey J. Rappaport | 1996 | $550.00 |
| Daniel M. Perry | 1999 | $450.00 - 485.00 |
| Manuel Yanez | 2001 | $440.00 |
| Edward C. Wipper | 2002 | $400.00 |
| Sarah Huppertz Thoma | 2002 | $400.00 |
| Nicole B. Capuano | 2003 | $375.00 |
| Project Assistants and Paralegals | n/a | $80.00 - 210.00 |

In addition, DLA Piper charged plaintiff the following rates:

| Name | Year Graduated from Law School | Hourly Rate |
|---|---|---|
| David Clarke, Jr. | 1981 | $560.00 |
| John R. Wellschlager | 1996 | $415.00 |

Upon request of the Court, plaintiff submitted an affidavit describing the standard billing time for DLA Piper associates located in the Baltimore, MD office.  (Paper No. 217). The rates are as follows:

| Year Graduated from Law School | 2005 Standard Hourly Rate |
|---|---|
| 1999 | $300.00 - 355.00[14] |
| 2001 | $315.00 |
| 2002 | $290.00 |

---

[13] The rates of Mr. Perry and Mr. Hirschfeld increased on January 1, 2005.

[14] The DLA Piper rate for a 1999 graduate increased on January 1, 2005.  Therefore, the $300 hourly rate is for 2004 time.

| 2003 | $255.00 |
|------|---------|

In its briefing, plaintiff concedes that the rates charged
by its New York based litigation counsel are higher than those of
comparable counsel in Baltimore.  (Paper No. 197, Ex. 2 at 11).
Plaintiff argues that the greater expense is justified, because
Milbank has substantial experience in the relatively specialized
field of hostile takeover defense.  (<u>Id.</u>)  While the Court does
not question Milbank's competence and qualification, plaintiff
failed to demonstrate that available Baltimore counsel lacked the
requisite skill to defend hostile takeover cases.  Without this
showing, the Court will consider counsel's rates in the context
of the Baltimore legal community.

As evidence of the customary rates in the Baltimore legal
community for hostile takeover cases, or similarly complex
litigation, plaintiff attached an affidavit from its local
counsel, DLA Piper.[15]  In its affidavit, DLA Piper submits that
its hourly rates for attorneys "are comparable to the hourly
rates of firms of similar size, skill and reputation in the

---

[15] The plaintiff also attached affidavits from three peer New York
firms with hostile takeover experience, from one District of Columbia
law firm, and from one Chicago law firm.  While the plaintiff suggests
that Baltimore/Washington DC is the relevant legal market, because
Washington DC is located in another circuit and is a distinct,
separate legal community, its argument lacks persuasive force.

Baltimore-Washington Region." Under the <u>Johnson</u> factors[16], while
the discovery dispute did not involve novel legal issues, the
underlying hostile takeover case certainly requires experienced
and sophisticated counsel.  Neither the experience, reputation or
ability of Milbank or DLA Piper has been questioned.  Nor did the
defendants challenge the DLA Piper rates.  Accordingly, DLA Piper
rates are used to value DLA Piper and Milbank's time in light of
the greater complexity and difficulty of hostile takeover cases
as compared with civil rights and employment cases contemplated
in the Appendix B Guidelines.  As no relevant documentation has
been provided for rates for paralegals or project assistants
within the Baltimore community, however, the Court applies the
rate detailed in Appendix B of the Local Rules.

   Thus, the Court hereby reduces the rates awarded to the
Milbank attorneys to reflect the rates at which DLA Piper
attorneys with comparable years at the bar would be billed.[17]  As
to Mr. Hirschfeld, plaintiff submitted no information on

---

[16] Only those factors relevant to the circumstances of the
particular case need to be considered.  <u>EEOC v. Service News Co.</u>, 898
F.2d 958, 965 (4th Cir. 1990) (applying lodestar method to finding of
attorneys' fees in Title VII case); <u>Liberty Mutual Insurance</u>, 176
F.Supp.2d 510, 532 (D.S.C. 2001).  Here, the following factors are
relevant based on the facts presented: 2) the novelty and difficulty
of the questions raised; (3) the skill required to properly perform
the legal services rendered; and (5) the customary fee for like work;
the experience, reputation and ability of the attorney.

[17] The Court understands that this is an approximation relying
solely on years at the bar and that the individual characteristics of
attorneys might result in different rates for attorneys with the same
years at bar.  However, the court is satisfied that rates are in line
with community rates based on the DLA Piper affidavit and the Court's
general knowledge of prevailing rates in the local legal community.

Baltimore rates for an attorney of his years at the bar and his experience and qualifications.  Accordingly, the Court will utilize the rate of the most experienced DLA Piper attorney, David Clarke.

| Name | Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| Michael L. Hirschfeld | $720.00 - 750.00 | $560 |
| Stacey J. Rappaport | $550.00 | $415 |
| Daniel M. Perry | $450.00 - 485.00 | $300 - 355[18] |
| Manuel Yanez | $440.00 | $315 |
| Edward C. Wipper | $400.00 | $290 |
| Sarah Huppertz Thoma | $400.00 | $290 |
| Nicole B. Capuano | $375.00 | $255 |
| Project Assistants and Paralegals | $80.00 - $210.00 | $65 |

Moreover, the Court will not reduce the rates charged by the DLA Piper attorneys.

| Name | Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| David Clarke, Jr. | $560.00 | $560.00 |
| John R. Wellschlager | $415.00 | $415.00 |

## 2.  Reasonable Hours - Sufficient Documentation

The fee applicant bears the burden of establishing appropriate documentation of the hours spent by counsel

---

[18] Mr. Perry's billable rates increased on January 1, 2005, so his billable rate will rise accordingly for time entries after January 1, 2005 from $300.00 to $355.00 an hour.

litigating the discovery dispute.  <u>Hensley v. Eckerhart</u>, 461 U.S.
424, 433 (1983).  The applicant must submit contemporaneous time
records revealing how the hours were allotted to specific tasks,
including, for each attorney, the dates, the hours expended, and
the nature of the work completed.  <u>Costar Group, Inc. v. Loopnet,
Inc.</u>, 106 F.Supp.2d 780, 787-788 (D. Md. 2000).  If documentation
is inadequate, the court may reduce the fee reward accordingly.
<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

## <u>Block Billing and Redactions of Unrelated Time</u>

Counsel for the plaintiff utilized a technique called block-
billing whereby each individual lists all tasks and records their
total daily time spent on the case, instead of allocating
specific time increments for specific tasks.  Under this system,
it is difficult to determine whether the work done is duplicative
or unnecessary.  <u>In re Olson</u>, 884 F.2d 1415, 1428-29 (D.C. Cir.
1989). ("[W]hen an attorney bill[s] for more than one task in a
day, the court is left to approximate the amount of time which
should be allocated to each task.  With such inadequate
descriptions the court cannot determine with a high degree of
certainty, as it must, that the billings are reasonable."
(Footnote and internal quotation marks omitted)).  Several courts
have reduced an award of attorneys' fees because of block-
billing.  <u>See</u> <u>Sea Spray Holdings, Ltd. v. Pali Financial Group,
Inc.</u>, 277 F.Supp.2d 323, 326 (S.D.N.Y. 2003)(reducing attorney
award by 15% for block billing, among other reasons); <u>Gratz v.</u>

Bollinger, 353 F.Supp.2d 929, 939 (E.D. Mich. 2005) (reducing fees by 10% for block billing and vague entries).  However, a reduction should only be made if the court cannot sufficiently determine the time allotted by the attorneys and the reasonableness of that time based upon those entries.  See Oklahoma Natural Gas Co. v. Apache Corp., 355 F.Supp.2d 1246, 1264 (N.D. Okla. 2004) (reducing fee by 10% when block billing prevented court from adequately assessing time spent on various litigation activities).

The plaintiff does not contest that its counsel engaged in block billing.  (Paper No. 197, Ex. 2).  Here, the use of block billing complicated the Court's evaluation of the reasonableness of the time spent on covered tasks, but ultimately did not prevent the Court from its review and conclusions.

Before submitting the entries to the Court, Milbank attorneys reviewed their original block-billed time entries and allocated time between related and non-related tasks and manually redacted any unrelated entries and eliminated any claim for fees for those unrelated entries based on the timekeeper's personal knowledge and judgment.  At the motions' hearing, Milbank attorney, Ms. Rappaport stated that she instructed counsel to reduce the time based on their personal knowledge, and to round downward if necessary to prevent over-billing.

Defendants object to the post hoc reduction, alleging in part that the practice resulted in invented numbers .  (Paper No.

-26-

193-1 at 4).[19]  "When it came time – months later – to prepare the Fee Petition, Plaintiff's counsel was required to "*recollect*" some number that was part of that aggregate daily block of time and assign it to the task... It is now impossible to properly determine whether and to what extent a now-claimed 1.0 hour "research" or "editing" project was true or reasonable in relation to the 5.0 hours daily block of time." (Id.)  It is true that the specific billing records at issue -- while based upon contemporaneous records -- cannot be said to have been created entirely contemporaneously.  Uzzell v. Friday, 618 F.Supp. 1222, 1226 (M.D.N.C. 1985) (reducing attorney award by 25% for unduly vague entries as they were not recorded contemporaneously).  Thus, the Court agrees with defendants in that these time records are less reliable than if the Milbank attorneys had contemporaneously listed all tasks with specific

---

[19] Defendants also contend that the redacted numbers are not statistically credible:  counsel failed to follow a consistent practice for refiguring the time, so some redacted time entries were billed to the tenth-hour and others were billed to the quarter-hour and by billing in quarter-hours, the plaintiff's bills may be inflated.  (Id. at 20.)  In response, plaintiff stated that "the indicated value was often rounded *downward* to eliminate even the possibility of intentional over-billing." (Paper No. 197, Ex. 2 at 18).  Review of the billing records demonstrates that time entries were expressed both in multiples of .1 and .25, demonstrating that plaintiff's counsel did not always use the more favorable .25 increment, but apparently used whichever unit more closely expressed the time spent on the allowed task.  John Toothman stated in his affidavit that the figures were not credible because the billing method led to an atypical distribution of time entries.  Even for those entries billed in quarter-hours, 96 of the 137 entries (or 70%) were for a round .5 or 1.0 or 2.0 hours.  Normally he says, an even distribution of time entries, more small than larger would be expected.  This opinion lacks sufficient foundation and the Court declines to adopt it.

time assigned to each task.  But the Court does not consider these time records so unreliable as to be rejected totally.[20]  Of course, the Court can and has looked at the total time spent on particular memoranda by all attorneys and if excessive in the aggregate, reduced the time allowed.  This, of course, provides a check against individual attorneys over-allocation of bloc recorded time to related and thus recoverable tasks.

Overall, Milbank's practice of block billing introduced a level of unreliability in the time entries, necessitated a post hoc adjustment of the bills, and made the court's review less precise.  Thus, although the Court recognizes the effort taken by

---

[20] Upon the Court's request, plaintiff submitted for in camera inspection Milbank's unredacted time records for the period at issue. The Court reviewed a sample of the entries from one month, for the following issues (1) any numerically inconceivable entries (e.g. time entries of over 21 hours in a day); and (2) any numerically inconceivable reductions (e.g. redacting all tasks but one and only reducing time by one-quarter of an hour).

Only two questionable entries were discovered.  First, on February 21, 2005, Ms. Capuano billed 2.5 hours to review deposition testimony, reply motions, and answers to second set of interrogatories, in addition to conducting internal correspondence and drafting S. Rappaport declaration for reply motion.  Based on her later review, Ms. Capuano redacted all unrelated entries, leaving only her review of the reply motion and draft of S. Rappaport declaration, but only reduced her time billed to 2.0 hours.  Second, on February 11, 2005, Stacy Hubbard originally billed 8.75 hours towards 13 separate tasks.  All but one of those tasks, reviewing the defendants' privilege log, were redacted.  However, on her updated sheet, Ms. Hubbard accounted 8.0 hours towards the single task.  These entries may be the appropriate allocations of time.

However, in both cases, even though a large number of tasks were redacted, the corresponding time entry only fell by a small percentage.  Notably, these were the exception, not the rule and thus do not raise a question regarding the integrity of the post hoc process of the individual Milbank lawyers.  But, this belated attribution of specific amounts of time to specific tasks decreases the reliability of the records.  The Court has recognized that decreased reliability by the overall 30% penalty reduction due to the block bill practice.

plaintiff to reduce incidences of overbilling to ensure fairness, for the foregoing reasons, a 30% downward adjustment of Milbank's attorneys' fees awarded will be taken after other reductions.[21]

### Requisite Detail

Billing records must contain sufficient detail for courts to conduct a meaningful review of the billing entries. League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist., 119 F.3d 1228, 1233 (5th Cir. 1997). See also Tomazzoli v. Sheedy, 804 F.2d 93, 98 n.5 (7th Cir. 1986) ("The billing records must be sufficiently clear to enable the district court to identify what hours, if any, are excludable because they are excessive, redundant, or otherwise unnecessary."). "At least counsel should identify the general subject matter of the time expenditures." Costar, 106 F.Supp.2d at 789 (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

Defendants disputed certain entries which refer to the subject matter at issue but fail to clearly establish the task with sufficient detail (e.g. "Attention to motion to compel production."). While more detailed entries would assist the Court's review, these entries are not so vague as to render review impossible, particularly when viewed in the context of the case. For example, many entries include dates of filings, court

---

[21] In comparison, while local counsel DLA Piper also utilized block billing, defendants do not challenge their time entries and they will be allowed.

hearings, etc.  However, when reviewing the aggregate amount of time spent on each task, these general entries sometimes resulted in a reduction in time allowed.  The generality of the entries prevented the Court from understanding the need for multiple attorneys working on a single motion and without specificity suggested duplicative or overlapping work.

However, some billing entries were so vague as to render it impossible to determine whether they relate to the motions at issue or not. (e.g. "attention to discovery issues and internal conferences re same").  Unless the time entries were listed with other entries in a block bill, they have been removed.[22]

Moreover, the bills submitted by counsel for Westlaw and Lexis expenses lacked the requisite specificity.  The bills described the date the attorney used the system and the amount charged for the use.  No description has been provided about why the research was necessary, to which motion it related, or even the amount of time spent researching.[23]  Without more information about counsel's billing arrangements with Westlaw and Lexis or

_____

[22] As discussed <u>infra</u>, many of the unduly vague entries are contained in block billing. In these circumstances, rather than use guesswork to determine the amount of time spent on the tasks, as discussed <u>supra</u> the Court reduces the award of fees in each circumstance by 15%.
All vague entries not contained in block billing are listed in Category XI of Appendix A.

[23] Counsel attempted <u>post</u> <u>hoc</u> to categorize why the research charges were incurred.  However, this categorization by itself is not sufficient.  The entries must contain specific information to enable the Court to conduct its own review, not rely on the parties' review of the time entries.

how the time was spent,[24] the Court is unable to conduct an
adequate review of the entries.  At the motions hearing, counsel
for the plaintiff assured the Court that they had reviewed all
unrelated time entries.  However, mere assurances of relevancy is
not enough.[25]  Consequently, the bills submitted for Lexis and
Westlaw expenses are disallowed entirely.[26]

### 3. Reasonable Hours -- Review of Time Spent on Matters

The court must review the submitted entries for "billing
judgment", that is, exclusion of time that is "excessive,
redundant, or otherwise unnecessary."  <u>Costar Group, Inc. v.
Loopnet, Inc.</u>, 106 F.Supp.2d 780, 789 (D. Md. 2000) (quoting
<u>Hensley</u>, 461 U.S. at 434).  <u>See also</u> <u>Poole v. Textron</u>, 192 F.R.D.
494, 508 (D. Md. 2000) (whether the moving party has engaged in
excessive or duplicate work, or other evidence of inefficiency.)
A party fails to exercise billing judgment when an inordinately
large amount of time is spent on a project.  <u>See</u> <u>International</u>

---

[24] Defendants' independent expert noted that "many large firms
have fixed price or other special contracts with West and Lexis for
computer research which convert a potential out of pocket charge into
an overhead items.  Firms, with the assistance of these companies,
sometimes try to convert this overhead into what appear[s] to be
client charges -- this is why documentation is particularly necessary
for this kind of charge."  (Paper No. 193, Ex. A at 23).

[25] At the October 25, 2004 telephone hearing, counsel for the
plaintiff offered to produce for in camera inspection the unredacted
Westlaw and LEXIS time entries.  After reviewing the proffered
entries, it is impossible for the Court to conclude any meaningful
review of why certain entries were redacted and others were included.

[26] The Court acknowledges that NRL seeks reimbursement for its
electronic research costs only, foregoing reimbursement for copying,
messengers, etc.  (Declaration of Stacey J. Rappaport, n. 4).

Association v. Werner-Matsuda, ___ F.Supp.2d ___, 2005 WL 2254002
(D. Md. 2005) ("[E]xperienced counsel should not need quite so
much time to research and draft the papers."); Costar Group, 106
F.Supp.2d at 789 (use of some time on certain tasks is
appropriate, but amount extended here was unreasonable); Broccoli
v. Echostar Communications Corp., 229 F.R.D. 506, 513 (D. Md.
2005) ("[T]ime incurred unreasonably excessive given the nature
of the task."). When evidence exists that a party carefully
reviewed its records for unreasonable time entries, courts have
been more willing to find the fees reasonable. See, e.g. Board
of Education of Frederick County v. I.S., 358 F.Supp.2d 462, 468
(D. Md. 2005).

The Johnson factors provide guidance on what constitutes an
inordinately large amount of time. However, only those factors
relevant to the circumstances of the particular case need to be
considered.[27] EEOC v. Service News Co., 898 F.2d 958, 965 (4th
Cir. 1990) (applying lodestar method to finding of attorneys'
fees in Title VII case); Liberty Mutual Insurance, 176 F.Supp.2d
510, 532 (D.S.C. 2001). Here, the following Johnson factors were
considered: (1) the time and labor expended; (2) the novelty and
difficulty of the questions raised; (3) the skill required to

---

[27] Defendants argue that plaintiff is improperly urging the Court
to consider their financial wealth. (Paper No. 200 at 7). Plaintiff
did assert that defendants have sufficient wealth to pay for any fee
award. (Paper No. 197 at 14). The Court will consider this evidence
solely for the purpose of determining the ability of the defendants to
pay for any attorney fee judgment. Arnold v. Burger King Corp., 719
F.2d 63, 68 (4th Cir. 1983).

properly perform the legal services rendered; and (7) the time limitation imposed by the client or circumstances.[28]

In addition to examining the number of hours spent on a matter, another consideration is the manner in which the case was staffed.  An award of attorneys' fees may be reduced if an unnecessarily large number of attorneys work on the matter, because their involvement tends to generate a degree of overlap or duplication of work.  See Goodwin v. Metts, 973 F.2d 378, 384 (4th Cir. 1992); Role Models America, Inc. v. Brownlee, 353 F.3d 962, 972 (D.C. Cir. 2004); Seaspray Holdings, Inc. v. Pali Financial Group 277 F.Supp.2d 323, 325 (S.D.N.Y. 2003)(moving party failed to establish why six attorneys and two paralegals were necessary to draft a ten-page motion to dismiss); Alexander S. v. Boyd, 929 F.Supp. 925, 943 (D.S.C. 1995) (reduced applicant's request by 10% because of duplication from involvement of large number of attorneys).  Similarly, the time spent on a matter may be unreasonable when the work could have been handled by a less-experienced attorney or by a non-attorney.  See Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals

---

[28] Defendants urge the Court to uncover duplicative work by comparing the "total number of hours worked against the document produced." (Paper No. 193-1 at 17).  The Court has done that, considering in its determination of reasonable hours the length and complexity of the resulting work product and the circumstances of its preparation.

or less experienced associates.... A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."); <u>New Mexico Citizens for Clean Air and Water v. Epsanola Mercantile Co.</u>, 72 F.3d 830, 834 (10th Cir. 1996).

The Court understands that complex litigation, particularly if on a fast track, requires staffing by multiple lawyers.  Here the case was generally staffed with lead counsel, Mr. Hirschfeld, a young partner, Ms. Rappaport, a fairly experienced associate, Mr. Perry, who was involved in significant aspects of the discovery and then a number of younger associates, Yanez, Capuano, Wipper, Thoma and paralegals, primarily Ms. Hubbard. Additionally, two partners at DLA Piper acted interchangeably as local counsel.

Moreover, the staffing on the case remained stable:  there was no revolving door, with new attorneys involved at different stages for relatively small assignments.  However, where it is unclear what different function each lawyer was serving in the task at hand or where there was redundancy of review, etc., the Court has eliminated the time of one or more of the lawyers working on the memorandum or project or reduced the time of particular lawyers.

Moreover, fees associated with unreasonable amounts of times billed to internal conferences, and other conferences among the parties are not recoverable.  Courts have reduced awards of attorneys' fees if an unreasonably high number of internal

conferences are held.  See In re Olson, 884 F.2d 1415, 1429 (D.C.

Cir. 1989).  Moreover, under this Court's guidelines, a party may

only recover time that a single, participating attorney spent at

intra-office conferences, client and third party meetings and in

hearings.  The Rules and Guidelines for Determining Lodestar

Attorney's Fees in Civil Rights and Discrimination Cases of this

Court (Appendix B to Local Rules of the District of Maryland)[29].

See also Broccoli v. Echostar Communications Corp., 229 F.R.D.

506, 513 (D. Md. 2005).  While this rule is arguably less

applicable to complex securities litigation than civil rights and

employment cases, it will be generally applied in recognition of

the several layers of supervision and oversight, apparent

throughout this case.  The moving party may bill the time at the

rate charged by the most senior attorney.  Id.

    In addition, sanctions are limited to reasonable expenses

incurred in connection with the motion.  See Humphreys

Exterminating Company, Inc. v. Poulter, 62 F.R.D. 392 (D. Md.

1974) (reducing award for time spent on other aspects of the

interrogatories); Role Models America, Inc. v. Brownlee, 353 F.3d

962, 973 (D.C. Cir. 2004)(rejecting time spent on tasks which did

---

[29] Fees may be awarded for the use of multiple attorneys during
"periodic conferences of defined duration held for the purpose of work
organization and delegation of tasks in cases where such conferences
are reasonably necessary for the proper management of the litigation."
The Rules and Guidelines for Determining Lodestar Attorney's Fees in
Civil Rights and Discrimination Cases of this Court (Appendix B to
Local Rules of the District of Maryland).  However, in the absence of
documentation by the plaintiff for the purpose of the teleconferences
or meetings, the Court lacks sufficient information to conclude which,
if any, of the meetings were held for this purpose.

not help the moving party prevail in appeal).

## III. Review of Time Entries

In light of the aforementioned considerations, the Court reviewed the submitted time entries for reasonableness.[30]

The plaintiff submitted a computer printout for the relevant time period containing descriptive daily chronological billing records, purportedly redacted to show only those entries reflecting services in connection with the subject discovery disputes.  In her Declaration, Stacy Rappaport assigned those billing entries to 1 of 10 categories, representing either a particular pleading or hearing or other discrete type of work related to the subject discovery disputes.[31]  The Court

---

[30] A detailed review of the time entries submitted by Milbank and DLA Piper is contained in Attachment A.

[31]

| CATEGORY | DESCRIPTION |
|---|---|
| A | Attempts to Persuade Defendants to Comply Voluntarily with Discovery Obligations (e.g., Letters, Teleconferences, Etc.) |
| B | Motion to Compel (e.g., Research and Drafting of Initial Motion Papers, etc.) |
| C | Reply in Further Support of Motion to Compel (e.g., Research and Drafting of Reply Submissions) |
| D | Response to Surreply (e.g., Research and Drafting of Response to Surreply) |

generally agrees with plaintiff's categories, as they allow evaluation of the time billed in light of the product produced or related event, such as a hearing.  However, review of the billing entries in light of the briefing and events in the case suggested some slightly different categories, and review of the billing entries also suggested some reassignment of some billing entries

| | |
|---|---|
| E | Proceedings Before Magistrate Judge Gauvey (e.g., Correspondence, Court Teleconferences, Responses to Defendants' Post-Surreply Submission and Indices, etc.) |
| F | Response to June 7 Order (e.g., Gathering Materials, Drafting Letter) |

Motion to Compel Production of Documents and
Responses to Deposition Questions and Interrogatories

| CATEGORY | DESCRIPTION |
|---|---|
| G | Attempts to Persuade Defendants to Comply Voluntarily with Discovery Obligations (e.g., Letters, Teleconferences, Etc.) |
| H | Motion to Compel (e.g., Research and Drafting of Initial Motion Papers, etc.) |
| I | Reply in Further Support of Motion to Compel (e.g., Research and Drafting of Reply Submission) |

Responses to Motion for Reconsideration of June 24 Order
and Motion to Stay June 24 Order Pending Appeal

| CATEGORY | DESCRIPTION |
|---|---|
| J | Review Motions and Prepare Responses (Research and Drafting, etc.) |

to different categories.[32]

For the purpose of Court review, the time entries were organized into the following categories:

| Title | Listed by Plaintiff as: |
|---|---|
| Category I – Motion to Compel Rule 26(a) Disclosures (Paper No. 71) | Category B. |
| Category II – Reply Memorandum in Support of Motion to Compel (Paper No. 94) | Category C |
| Category III - Response to Defendants' Surreply to Motion to Compel (Paper No. 108) | Category D |
| Category IV – Plaintiff's Motion to Compel Privilege Log (Paper No. 95) | Relevant entries from A & C |
| Category V - Plaintiff's Motion to Compel Production of Documents (Paper No. 99) | Category H |
| Category VI - Plaintiff's Reply Memorandum in Support of Motion to Compel (Paper No. 112) | Category I |
| Category VII - Motions to Reconsider and Stay Judgement (Paper Nos. 179 & 185) | Category J |

---

[32] Time spent drafting "Motion to Compel Documents Improperly Withheld on the Basis of privilege (Paper No. 95) was placed in two separate categories. All entries from between January 10, 2005 and January 22, 2005 were placed in Category A, ("Attempts to persuade defendants to comply voluntarily with discovery obligations.") All entries from between February 22, 2005 and February 25, 2005, were placed in Category C ("Reply in further support of motion to compel"). Since the Court's job requires a review of the reasonableness of time spent on any particular submission or activity, it is more helpful to the Court to aggregate all the time spent on a submission (Paper No. 95) than break it up as plaintiff did. Accordingly, all time devoted towards drafting the motion to compel has been segregated into a new category, Category IV. In addition, as plaintiff was required to devote enormous resources towards reviewing defendants' various privilege logs, an additional category was created for time devoted to this task. Finally, all unrelated and unduly vague entries (if separately entered and not part of block bill) were segregated into new categories. In all other circumstances, the Court reviewed the time entries as they had been separated into categories by the plaintiff.

| Category VIII - Review of Defendants' privilege log | N/A |
|---|---|
| Category IX - Attempts to voluntarily compel compliance | Categories A & G |
| Category X - Proceedings before the Court | Category E & F |
| Category XI - Unduly vague entries | N/A |
| Category XII - Unrelated entries. | N/A |

The Court considered the following factors in determining the reasonableness of the hours billed: (1) the number of timekeepers who billed time to the category; (2) any over-qualified timekeepers for the task documented; (3) the number of attorneys involved in internal and external conferences calls or hearings; (4) the number of internal conferences and internal memoranda; (5) whether the block bills contained any vague or unrelated entries that could not otherwise be effectively segregated; and (6) the amount of time spent in relation to the task at hand.[33]

If factor 2 (over-qualified timekeeper) was at issue, the Court reduced the reasonable billable rate to the billable rate of the level of attorney who could have conducted the work.  If

---

[33] Defendants urge the Court to consider the reasonableness based on the overall amount of fees sought as spending 900 hours billed is the very paradigm of "excessive."  Moreover, their independent expert, John Toothman, stated plaintiff claimed an extraordinary sum of money for a routine discovery dispute. (App. A, at 4).  While the sums of money at issue are clearly extraordinary, the Court's obligation is to review the time records based on the tasks at hand in the context of the litigation as known to the Court, not to jump to conclusions based solely on the amount of fees.

factor 3 (multiple attorneys billing time to internal or external conferences or hearings) was at issue, as provided under the Local Rules, only the time of the most senior attorney was allowed.  If either factors 4 (unreasonable number of internal conferences or multiple attorneys billing time to internal or external conferences or hearings in block bill) or 5 (vague or unrelated entries in block bills) were at issue, any time entries containing the objectionable time entries are reduced by 15%.[34] Finally, if either factors 1 (unreasonable number of attorneys) or 6 (unreasonable time) were at issue, generally the Court disallowed all time entries except for the time spent by the Milbank attorneys primarily involved with the matter, as determined by the circumstances.[35]

### Category I: 12/27/04 Motion to Compel Fed. R. Civ. P. 26(a) Disclosures, Production of Documents and Proper Privilege Log (Paper No. 71)

Four attorneys (3 Milbank and 1 DLA Piper) billed 30.4 hours

---

[34] In a few limited instances, when task(s) of the unrelated or unduly vague entries would clearly have consumed significantly more than the rest of the tasks in the whole block bill entry, the Court reduced the time by 50%, not the standard 15%.

[35] It is possible that with exquisitely detailed time records specifying the different tasks of multiple lawyers working on the same matter, the assignment of up to seven attorneys on one task might be seen as reasonable.  However, the unclear nature of the time entries prevents the Court from conducting a review of each individual time entry for reasonableness.  After all, if seven attorneys billed time towards researching and drafting a motion without explaining what issues were being researched and why and what each brought to the research and drafting process, it is difficult to determine whose time was necessary, and not duplicative.  Instead, the Court will presume that the time spent by those predominately involved in the matter were those whose time was most essential and reasonable.

to draft the twelve page motion.  Of the 30.4 hours, 23 were billed by a single attorney, who was primarily involved with researching and drafting the motion.  Thus, based on the review, counsel did not spend an unreasonable number of hours in relation to the task at hand or involve an unreasonable number of attorneys.

Over five days, counsel billed time to attend three internal conferences and to draft seven different internal memoranda, correspondence and electronic communications, an unreasonable number.  No block bills contained any unduly vague entries.  However, review indicates two unrelated entries.[36]

However, the research and initial drafting done by Stacey Rappaport, a partner at Milbank, could have been done by an attorney with less experience.  Consequently, her time will be billed at the reasonable rate of Mr. Daniel M. Perry, a senior associate who graduated from law school in 1999.

After reviewing time for the aforementioned factors, the Court hereby reduces the amount billed to 20.57 hours.

**Category II: 2/23/05 Reply Memorandum of Law in Further Support of Plaintiff's Motion to Compel Production of Documents Withheld on the Basis of Privilege (Paper No. 94)**

The Court reviewed the relevant time entries using the six factors discussed <u>infra</u>.  Here, six Milbank attorneys, two DLA

---

[36] Ms. Rappaport's block bill of December 26, 2004 contained one unrelated time entry, for "drafting the opposition to the motion to dismiss."  In addition, her block bill of December 25, 2004 billed time "to stay of discovery under PLSRA."

Piper attorneys, and one paralegal billed 116.55 hours towards drafting the twenty-four page reply memorandum.  According to the billing records, an associate billed 26 hours to "finaliz[e] the reply memorandum."  Thereafter, a partner reviewed the draft and conducted research for 48.25 hours.  At the same time, two other associates, one additional partner, a paralegal and local counsel billed 42.3 hours to revise the reply memorandum.

Under the Johnson factors, drafting the brief entailed mastering the factually complex relationship between the different trust entities and the discovery to date in the case.

Having reviewed all the aforementioned factors, too many attorneys were involved in revision of the memorandum and an unreasonable amount of time was spent in revision of the memorandum in relation to the task at hand.  Attorneys Rappaport and Yanez were primarily involved in researching and drafting the memorandum.  Consequently, their time will be allowed.  In addition, Mr. Hirschfeld's time will be allowed as lead counsel and the small amount time billed by local counsel will be allowed.  The time of the remaining attorneys and paralegal is disallowed.

Six separate internal conferences were held to discuss the drafting of the memorandum.  Because the memorandum was drafted over a two week period, this number is not greatly excessive.  Moreover, the block time entries do not contain any unrelated or unduly vague entries.

However, a Milbank partner, Rappaport, spent 48.25 hours
researching the issues, work that could have been performed by a
less experienced attorney.  Consequently, any time spent by
Rappaport on researching the issues will be billed at the rate of
Daniel M. Perry, a senior associate who graduated from law school
in 1999.

After reviewing the entries for the six factors, the amount
of time is hereby reduced to 83.55 hours.

### Category III: 4/4/05 Response to Defendants/CounterClaimants' Surreply in Further Support of Plaintiff's Motion to Compel Production of Documents Improperly Withheld on the Basis of Privilege (Paper No. 108)

Seven Milbank attorneys, two DLA Piper attorneys, and one
paralegal billed 70.85 hours towards drafting the response to the
eleven page surreply and supporting exhibits, and the three page
letter objecting to defendants' request to file the surreply
(Paper No. 98).

Three attorneys (Capuano, Rappaport and Hirschfeld) billed 6
hours to review the motion to file a surreply.  One of the
attorneys (Capuano) was not involved in either drafting the
letter or response.  Rappaport, Hirschfeld, Perry, and Clarke
then spent 14.2 hours drafting a three page letter objecting to
the motion to file a surreply.

Beginning on April 2, 2005, Rappaport dedicated 16.25 hours
to the response to the surreply.  Revisions were made to the
draft by Hirschfeld, Perry, Yanez, Wipper, and Rappaport, with

the assistance of a paralegal, for a total of 31.7 hours. Finally, Wellschlager and Capuano spent .9 hours reviewing the response to the motion the day after it was filed.

The amount of time spent on the memoranda and the letter objecting to the motion to file surreply was unreasonable in relation to the task at hand and an unreasonable number of attorneys were staffed to the matter.  Review shows that two attorneys were primarily involved in drafting the memorandum, Rappaport and Hirschfeld, and Daniel Perry was primarily involved in the later stages.  Thus, all Milbank time entries except those of Rappaport, Hirschfeld and Perry are unreasonable and are disallowed.  In comparison, the time spent by local counsel was reasonable and will be allowed.

In addition, counsel participated in ten separate intraoffice conferences, an unreasonable amount.  Moreover, the block billing records contain two unrelated entries.[37]  No unduly vague entries were found.  The amount of time spent in the entries containing the intraoffice conferences or unrelated entries will be reduced accordingly.

One partner billed more than half of the hours spent on the motion or 36.25 hours.  As the discovery dispute became more contentious, it is reasonable for more senior attorneys to play

---

[37] Ms. Rappaport's entry of April 3, 2005, contained an unrelated entry, to "revise responses and objections to contention interrogatories."  In addition, Mr. Hirschfeld's entry of the same date contains the following unrelated entry "review.. decision on individual's motion to dismiss."

an increased role in supervising the more junior attorneys.
However, by billing 36.25 hours towards drafting and revising the
memorandum, counsel was acting in more than a supervisory role.
As a result, all of Rappaport's time entries will be billed at
the rate of Daniel M. Perry, a senior associate who graduated
from law school in 1999.

After considering all of the aforementioned factors, the
time billed will be reduced to 51.24 hours.

**Category IV: 2/25/05 Motion to Compel Production of Documents
Improperly Withheld on the Basis of Privilege (Paper No. 95)[38]**

Plaintiff filed this three page motion on February 25, two
days after filing its reply memorandum on the initial Motion to
Compel Fed. R. Civ. P. 26(a) Disclosures, Production of Documents
and Proper Privilege Log (Paper No. 71).  The Court has concluded
that the plaintiff filed this new, additional motion out of an
abundance of caution.  Its initial motion focused on, and
primarily sought, a proper privilege log with required supporting
documentation.  Between the initial filing and February 25,
defendants provided their bare bones justification for
withholding of documents and plaintiff's focus changed to the
inadequacy of the justification and a demand for the documents
themselves.  Notwithstanding the fact that this "updating" motion

---

[38] While it is styled as a separate motion, in fact, it
supplements the original motion to compel and will be treated as such.
Accordingly, all of the briefing relates to the initial motion to
compel (Paper No. 71).

was occasioned by the shifting sands of defendants' discovery position, the amount of time billed to this motion is unreasonable and is disallowed substantially.

Six attorneys billed 43.6 hours in connection with the three page motion to compel.  Between January 9, 2005 and January 22, 2005, two associates billed 22.75 to draft the motion.  No further work was done on the motion for a month.  Then, on February 22, 2005, two associates and two partners billed 20.85 towards revising, finalizing and filing the supplemental motion. Under the Johnson factors, the motion does not contain any discussion of the legal or factual issues involved in the case. Instead, the motion merely summarized the dispute between the parties, and urges the Court to intervene without discussing the merits of the position.

More than half of the memorandum discusses events occurring after January 22, 2005.  Consequently, it is apparent that significant editing of the document was necessary once work began again on February 22, 2005.  As a result, all but one of the entries billed prior to January 23, 2005 is unreasonably duplicative and will be completely disallowed.[39]

Even the remaining 20.85 hours are unreasonably high, given that the motion merely summarizes the dispute before the Court

---

[39] On January 17, 2005, Perry billed 2.5 hours to "review of email concerning defendants' updated privilege log; research issue of privilege."  The time spent on this task is not unreasonable as it appears to relate generally to privilege issues which did require extensive analysis and research.

without addressing any new substantive issues.  Our review
indicates that two associates, Yanez and Perry, spent 14.0 hours
on the motion, and were primarily responsible for the draft.  The
Court also will allow the time of local counsel.  Time entries of
any other timekeepers are disallowed.

No evidence exists that any attorneys were overqualified to
perform the task at hand or that any block bills contained
unrelated or unduly vague entries.

A total of six intraoffice conferences were held in
connection with the supplemental filing.  In addition, the
parties sent five intraoffice memoranda in connection therewith.
Given the sparsity of the issues raised therein, this time is
unreasonable.  Each time entry still at issue containing time for
the internal conferences will be reduced by 15%.

After reviewing the time entries for the six relevant
factors, the time allowed to the motion is reduced to 18.96
hours.

**Category V: 3/24/05 Motion to Compel Production of Documents and
Responses in Responses to Deposition Questions and
Interrogatories (Paper No. 99)**

Four associates (Capuano, Perry, Yanez and Wipper), three
partners (Hirschfeld, Rappaport and Wellschlager) and one
paralegal (Hubbard) billed 86.6 hours to draft the twenty-page
motion with accompanying exhibits.  A junior associate dedicated
25 hours to drafting the motion between February 23, 2005 and
March 8, 2005.  During this time, her work was minimally

supervised by more senior members of the firm for a total of 5.75 hours.  Then, two days before the motion was filed, six attorneys and one paralegal billed 57.3 hours to revise the motion.  Under the <u>Johnson</u> factors, counsel was not under a time restraint to file the motion.  The legal issues presented were not particularly complex; however, the motion did require considerable analysis and exposition of the factual record in the case.

After reviewing the time entries, too many attorneys were involved, undoubtedly resulting in inefficiency and duplication of effort.  For example, Ms. Capuano, a 2003 graduate did most of the initial work on the motion, but then largely dropped out of the effort and two other associates, 2002 graduates, got involved.  While there might be a justification for this number of attorneys involved if tasks did not overlap, etc. the billings' descriptions do not provide that justification, leading the Court to conclude that an unreasonably high number of hours were expended in relation to task at hand.  Capuano and Rappaport appear to have been the most involved in drafting the motion.  Time of the other similarly experienced "substitute" associates, Yanez and Wipper, will be excluded.  The Court allows the time of Capuano, Rappaport, Mr. Hirschfeld, as lead counsel, Mr. Perry, given his consistent involvement and role in the case, local counsel, and the paralegal, Ms. Hubbard.

Counsel participated in seven internal conferences in

connection with the motion.  Moreover, three internal memoranda were drafted.  Because all but one of these activities occurred within a four day period, counsel spent an unreasonable amount of time on the internal communications.  As a result, all block entries containing time billed towards such conferences is reduced by 15%.

In addition, two partners participated in a phone call with Judge Davis regarding the discovery disputes on March 23, 2005. Pursuant to the Local Rules, only the time of the most senior participating attorney is allowed.

The block bills did not contain any unduly vague entries, but review uncovered one unrelated entry.[40]

Based on the foregoing factors, the Court finds and awards the reasonable number of hours in connection with the motion to compel to be 68.72 hours.

### Category VI: 4/7/05 Reply Memorandum in Further Support of Plaintiff's Motion to Compel Production of Documents and Responses in Responses to Deposition Questions and Interrogatories (Paper No. 112)

Three associates and two partners spent 50.25 hours researching and drafting the eighteen page reply memorandum.  On April 5, 2005, all five attorneys billed time to review the defendants' response.  Over the next two days, five attorneys assisted in the drafting and completion of the reply memorandum.

---

[40] Mr. Perry's block billing record of March 24, 2005 shows he spent time "drafting notice of service of opposition to motion to compel; t/c with J. Wellschlager re: same."

Under the Johnson factors, the legal issues were not especially novel, but counsel was working under some time restrictions and the analysis and exposition of the factual record was demanding.

Accordingly, the Court finds that there was overstaffing with the time expended unreasonable to the task at hand. However, given the time constraints, it was reasonable for the plaintiff to involve three attorneys.  Hirschfeld, Rappaport and Yanez appear to have been primarily responsible for drafting the reply memorandum.  As a way of recognizing and eliminating from the bills the inefficiency and duplication inherent in multiple attorney involvement, all other time entries are disallowed.

Counsel held six internal conferences in connection with the dispute, an unreasonable number given that work was conducted over a three-day period.  Thus, any entries containing internal conferences is reduced by 15%.

While the billing entries do not contain any unrelated entries, two of the block entries contain time for the following task "attention to discovery issues."  As the entry lacks sufficient detail to determine whether the discovery issue relates to the matter at hand, the time allotted to the entry will be reduced by 15%.

Moreover, one associate, Yanez spent 3.0 hours preparing materials to be served with the motion to compel.  As the task could have been performed by a non-attorney, the reasonable hourly rate for the task is the rate of a paralegal.

After reviewing the aforementioned factors, the Court reduces the amount of hours to 34.05 hours.

**Category VII: 6/29/05 Response in Opposition to Motion to Reconsider (No. 179) and 6/30/05 Response to Motion to Stay Portion of June 24, 2005 Order Pending Appeal (No. 185)[41]**

Over four days, six attorneys and two paralegals billed 142.85 hours to draft a thirteen page response to the motion to reconsider and a nineteen page response to the motion to stay judgment. Under the Johnson factors, after spending a significant amount of time litigating the issues, it is understandable that the plaintiff would want to proceed carefully to protect the relief afforded. Moreover, the defendants filed motions to shorten time for plaintiff's responses. Judge Davis granted the motion to shorten as to the motion to stay. While the undersigned did not shorten the response time as she was out of the courthouse, plaintiff apparently and understandably quickly filed its response to the motion to reconsider, not knowing of the judge's absence. But, while the motions had to be drafted in a short period of time and did involve some new legal issues, the issues were not so novel or complicated to justify a bill of over sixty thousand dollars.

---

[41] The billing practices used by the plaintiff's counsel rendered it impossible for the Court to distinguish between the time spent on each memorandum. Since the work on the two memoranda occurred during the same time period and involved much of the same subject matter, failure to segregate the time is not fatal to the fee petition and indeed, would have been difficult given the overlap. Moreover, plaintiff included the work on the memoranda within the same category.

The Court concludes that an unreasonable number of attorneys were involved in the matter, and the amount of time spent was unreasonable in relation to the task at hand.  All six lawyers billed time for research -- the exact amount is unclear due to the block billing format.  To account for the undoubted inefficiency of this staffing, the Court will allow only the time of Hirschfeld, Perry, Yanez and Hubbard.  While ordinarily the amount of time devoted to the matter by lead counsel would be unusual, given the time pressures and the importance of effort to retain the favorable ruling, it is acceptable.

During the four day period, counsel held twelve internal conferences, and drafted five internal memoranda.  Over such a short period of time and given the time constraints, this number is excessive.  Consequently, any block billing containing the entries will be reduced by 15%.

No unrelated or unduly vague entries were found.  In addition, all timekeepers appeared to perform tasks appropriate to their level of expertise.

Based on the foregoing factors, the Court will reduce the number of hours allowed to 98.26 hours.

**Category VIII: Time Spent Reviewing the Defendants' Privilege Logs[42]**

---

[42] Defendants allege that time spent reviewing document production for reconciliation with privilege logs and reviewing documents produced by defendants is irrelevant as the plaintiff would have had to review the entries regardless of whether the motion had been filed. The Court disagrees.  Because of the sparsity of the privilege log and the lack of supporting documents, plaintiff's counsel necessarily

Overall, counsel for plaintiff spent 80.15 hours reviewing the various privilege logs submitted by defendants.  In light of the various changes made to the multiple privilege logs, including wide scale additions and subtractions to the entries on the log and the alteration of assertions of privilege therein, the time spent by counsel reviewing the logs is not unreasonable in relation to the task at hand.

The billing entries at issue did contain one unrelated billing entry.[43]  Throughout the five months of the privilege log controversy, eight internal conferences were held and one internal memorandum was drafted.  Given the numerous changes defendants made to the log, the number of meetings is reasonable. Finally, all personnel appear to have performed tasks appropriate to their level of expertise, and the billing entries do not contain any unduly vague entries.

However, six attorneys and two paralegals were involved in privilege log review.  Accordingly, to address the inefficiency and duplication of effort that such staffing necessarily engenders, the Court disallows the time of Capuano, Yanez and Rappaport who worked least on the matter, for a total of 13

engaged in detective work trying to determine the nature of the withheld documents and the context of them so as to be able to argue the lack of privilege.

[43] Mr. Perry's entry of March 22, 2005, contained an unrelated entry, "drafted letter to S. Ward requesting documents called for in S. Miller deposition."

hours.  While 65.78 hours still may appear excessive, the defendants' repeated changes to the log and defendants' lack of provision of significant justifying information necessitated the repeated reviews and attempts to understand the nature of withheld documents to effectively argue for their production.

After reviewing the relevant factors, plaintiff is compensated for 65.78 hours spent reviewing the privilege logs.

### Category IX: Attempts to Persuade Defendants to Comply Voluntarily with Discovery Obligations

Counsel billed 43.8 hours towards their efforts to persuade defendants to voluntarily comply with their discovery obligations.  Rappaport and Perry handled these efforts with a small amount of time expended by Huppertz.  The Court reviewed their time under the six factors.

Overall, plaintiff spent a reasonable amount of time corresponding with defendants.  The billing records reveal that seven letters were sent by plaintiff to defendants to encourage resolution.  This number is not unreasonable as it is important for parties to attempt to remedy discovery disputes without involving the Court and given that the contents of defendants' privilege log changed on multiple occasions.

In the following circumstances, counsel billed time for multiple attorneys to participate in calls with defendants.  On January 5, 2005, two attorneys participated in a discovery conference with defendants.  Similarly, on January 6, 2005, two

-54-

attorneys participated in a discovery conference.  Pursuant to the Local Rules, all time but the time of the most experienced attorney is disallowed.

While the Court is not critical of the staffing of the matter with two attorneys, the counsel sometimes performed discrete tasks where the time expended was excessive in light of the task at hand.  For example, counsel spent thirteen hours drafting a letter to defendants regarding a response to motion to compel production of documents improperly withheld on the basis of privilege between January 23, 2005 and January 27, 2005.  The Court finds this time to be unreasonably high to draft a letter with no evidence that it involved complex, new legal issues, especially when counsel spent a significant number of hours drafting their motion during the same time period.  Accordingly, the Court has reduced the time allowed by 25% or 50% for specific tasks where time appeared excessive.

The billing entries at issue contained one unrelated entry, but no unduly vague descriptions were located.[44]  Only one internal conference was described in the entries, a reasonable number.  Finally, all personnel appear to have performed tasks appropriate to their level of expertise.

For the foregoing reasons, the amount of time is reduced to 35.3 hours.

---

[44] Mr. Clarke's entry of January 27, 2005, contained an unrelated entry, "communications with relationship partners regarding service of subpoenas."

### Category X: Proceeding Before the Court

Counsel spent 254.75 hours drafting various correspondence to the Court (essentially letter motions and memoranda) and preparing for and participating in conferences therewith.  The Court conducted under the six factors an entry-by-entry review of the correspondence and conferences about which, of course, the Court is knowledgeable.

In the following circumstances, counsel billed time for multiple attorneys to participate in proceedings before the Court.  On March 31, 2005, four attorneys participated in a conference call with Judge Gauvey.  Similarly, four attorneys participated in the April 22, 2005 hearing before Judge Gauvey.  Pursuant to the Local Rules, all time but the time of the most experienced attorney is disallowed.

Moreover, five attorneys billed time on May 11, 2005 and May 12, 2005 to review this Court's order of May 11, 2005.  Like internal conferences, the defendants should not be required to pay for plaintiff to keep an unreasonable number of attorneys informed about the case's status.  Thus, only the hours spent by the three most-experienced attorneys to review the orders will be allowed.[45]

In addition, two of the billing entries at issue contain an

---

[45] In some circumstances, the Court found the amount of time spent to reviewing orders or to participate in hearings or internal conferences was unreasonable.  For these entries only, the Court further reduced the time awarded by 50%.

unrelated and unduly vague entry.[46]

Within plaintiff's general category of "Proceeding Before the Court", are several specific tasks, including various submissions to the Court.  Each submission was reviewed separately.

1. Paper No. 102 (March 28, 2005 letter)

Between March 23 - 28, 2005, three attorneys billed 4.5 hours to draft and file a four-page letter to the Court dated March 28, seeking expedited consideration of the discovery matters. (Paper No. 102).   After reviewing the aforementioned factors and the letter product, the time spent is not unreasonable.

2.  Paper No. 110 (April 6, 2005 letter)

Between April 5-6, 2005, counsel spent 10.00 hours drafting a letter to Judge Gauvey regarding discovery disputes relating to the privilege log and document production.   After reviewing the aforementioned factors and the letter product, the time spent is not unreasonable.

3. Paper No. 115 (April 15, 2005 letter)

Between April 7-14, 2005, five attorneys and one paralegal billed 110.90 hours to draft a twenty page memorandum with multiple attachments, detailing the plaintiff's response to

---

[46] Mr. Clarke's entry of April 12, 2005, contained an unrelated or unduly vague entry, "Review (a) memorandum from Ms. Martin and subpoenas; (b) Ms. Yanez' response."  In addition, his entry of April 28, 2005, contains the following unrelated or unduly vague entry," Correspondence with Ms. Gonzalez."

defendants' April 6 and 12 indices to the privilege log. (Paper
No. 115). In the memorandum, critiquing the latest privilege
logs, counsel argued that assertions made in the logs were
inconsistent with deposition testimony, and that the privilege
logs omitted information that would have shown the documents were
not privileged. Clearly, the issues were very fact-intensive,
requiring a careful review of both the indices and other
available discovery in a short time frame. Still, over one
hundred hours of labor was not required to coherently and
reasonably explain the issues to the Court. The plaintiff
involved an unreasonable number of attorneys and spent an
unreasonable amount of time in relation to the task at hand. Two
attorneys, Wipper and Rappaport, spent 61.1 hours on researching
and drafting the response. Only their time will be allowed. As
the junior partner on the matter, Ms. Rappaport's time – 25 hours
– seems excessive, particularly in light of the considerable time
of Wipper – 41.1 hours - and the additional review time of the
lead counsel, Mr. Hirschfeld. Accordingly, 25% reduction of some
of Ms. Rappaport's time entries has been made.

During the seven days spent drafting Paper No. 115, counsel
held 13 intraoffice conferences and drafted five intraoffice
memoranda, an unreasonable number, even given the complexity and
importance of the analysis to plaintiff's discovery interests.
All block bills containing the intraoffice conferences will be
reduced by 15%. Moreover, multiple attorneys billed time for the

same intraoffice conference held on April 12, 2005.  Under the
Local Rules, only the time billed by the most senior attorney is
allowed for the double-billed conferences.  Otherwise, the Court
did not locate any unrelated or unduly vague time entries.

Based on the foregoing reductions, the amount of time
allowed is hereby reduced to 66.51 hours.

3. Paper No. 120 (April 28, 2005 letter)

On April 28 and 29, 2005, counsel spent 4.0 hours drafting a
letter to Judge Gauvey in response to defendants' request for an
extension of time.  (Paper No. 120).  After reviewing the time
entries, with one exception, a reasonable amount of time was
spent on the letter in relation to the task at hand.  In
addition, the Court did not locate any unduly vague or unrelated
time entries, and it does not appear that an unreasonable number
of internal conferences were held.  Accordingly, all four hours
are allowed.

4. Paper No. 125 (May 2, 2005 letter)

From April 30, 2005 through May 2, 2005, two attorneys spent
12.6 hours drafting a four page letter to the Court in response
to defendants' submission of April 29, 2005 in connection with
the dispute.  (Paper No. 125).  Given that it was necessary for
plaintiff to spend several hours reviewing defendants' submission
prior to drafting the letter, counsel spent a reasonable amount
of time in relation to the task at hand.  In addition, no time
entries contained unduly vague or unrelated descriptions and

counsel did not engage in an unreasonable number of internal conferences.  Accordingly, the Court will allow all of the hours billed towards the letter.

5. Paper No. 127 (May 3, 2005 letter)

On May 3, 2005, two attorneys spent 12.75 hours writing a five page letter to the Court detailing plaintiff's initial response to the defendants' revised May 2, 2005 privilege log. (Paper No. 127).  Again, given that plaintiff needed to review the updated log and accompanying letter in light of prior submissions before drafting the letter, the amount of time spent is not unreasonable.  However, as counsel held five intraoffice conferences to discuss the letter in a single day, all time entries containing descriptions for internal conferences will be reduced by 15%.  Thus, the Court hereby reduces the amount of time spent on the letter to 10.84 hours.

6. Paper No. 132 (May 6, 2005 letter)

Between May 3-6, 2005, five attorneys and one paralegal spent 49 hours drafting a supplemental ten page letter to the Court responding to defendants' submissions.  (Paper No. 132). As requested by the Court, the letter contained the substantive text of Paper No. 127, a five page letter.  As a result, counsel already devoted 12.0 hours towards analyzing and drafting the letter at issue.  This letter represented fact-intensive analysis and comparison of defendants' prior submissions to current submissions.  This type of careful review and analysis was

helpful to the Court and necessarily time-consuming.
Accordingly, given the time pressures and the critical nature of
this analysis, the Court will allow all time, except as indicated
below.

During the four days, counsel engaged in six intraoffice
conferences and exchanged two intraoffice memoranda due to the
large number of attorneys involved, all entries containing this
time will be reduced by 15%.  No time entries contained time for
unduly vague or unrelated issues.  For the foregoing reasons,
amount of hours spent on Paper No. 132 is reduced to 45.07 hours.

7.  Paper No. 168 (June 8, 2005 letter)

Counsel billed 11.75 hours responding to the Court's June 7
order (Paper No. 166), requesting any contemporaneous
documentation of the defendants' production of documents.  In
response, plaintiff produced 58 pages worth of documents and a 1
page letter.  (Paper No. 168).  The work was conducted by
attorneys with appropriate experience and knowledge for the
appropriate amount of time.  Moreover, counsel engaged in a
reasonable amount of internal conferences, two, over two days.
Finally, no entries contained time for unrelated or unduly vague
time.  Thus, no reduction needs to be made at this time.

For the reasons detailed above, the Court reduces the total
amount of time spent in this category to 175.54 hours.

**Category XI (Unduly Vague Entries) & Category II (Unrelated
Entries)**

As discussed <u>supra</u>, the submitted time entries contained instances of unduly vague entries.  The entries have been disallowed and are laid out in Appendix A.

In addition, unrelated entries are disallowed and are laid out on Appendix A.

### 4. Liability for Fees

The court imposes joint and several liability for the payment of the attorneys' fees on the defendants and lead counsel, James H. Hulme of Arent Fox PLLC.[47]  "When the responsibility for an unjustifiable position taken with respect to a motion to compel rests solely with a party's attorney, courts may order that attorney to pay expense shifting sanctions."  7 Bender, <u>Moore's Federal Practice</u> 3d § 37.23[4][a] (2005).  The Court has discretion to apportion the fault between the attorney and client.  <u>Id.</u>  Counsel will be responsible for the award only "when it is clear that discovery was unjustifiably opposed at his instigation."  <u>Humphreys Exterminating Company, Inc. v. Poulter</u>, 62 F.R.D. 392, 395 (D. Md. 1974).  In any document dispute, the client influences how counsel chooses to respond to discovery requests.  Yet, unlike substantive document requests, counsel plays a large role in determining which

---

[47] The Court's authority to grant sanctions extends to individual counsel of record, not to the law firm representing defendants.  <u>Poole v. Textron</u>, 192 F.R.D. 494, 511 n.24 (D. Md. 2000).  While lawyers in the case, other than lead counsel, may have been responsible for the unjustified legal positions and piecemeal presentation of privilege positions, the court will not impose liability on other, more junior attorneys whose culpability, if any, is not clear to the Court.

documents are asserted to be privileged, and the formulation of the privilege positions in the privilege log and associated submissions.  While lead counsel may have delegated discovery responses to one of his colleagues, who also should bear responsibility for the expenses award, the Court is not in a position to determine that nor how much fault is the clients', as opposed to the attorneys.  Accordingly, the award is joint and several against lead counsel and the defendants.

**IV. CONCLUSION**

After multiplying the hours expended against the attorneys' hourly rates and taking the aforementioned reductions, the Court awards $154,654.89[48] to the plaintiff jointly and severally against the defendants and James H. Hulme, lead counsel.

Date: 12/23/05                    /s/
                                Susan K. Gauvey
                                United States Magistrate Judge

---

[48] A complete mathematical explanation for the figure is available at Appendix B.